[Civ. No. 21109. First Dist., Div. Two. Oct. 21, 1963.]

WAYNE HULBERT et al., Plaintiffs and Respondents, v. LUKE LATURCO et al., Defendants and Appellants.

Spurr & Brunner and W. H. Brunner for Defendants and Appellants.

A. B. Broaddus for Plaintiffs and Respondents.

AGEE, J.—Following a collision between plaintiffs' Cadillac and defendants' truck, plaintiffs (husband and wife) recovered a judgment of $1,103.43 for damage to their Cadillac. The wife was driving and will be referred to hereafter as "respondent."

Defendants' appeal raises but one issue, whether the evidence is sufficient to sustain the trial court's finding that their truck driver was negligent.

The collision occurred on December 18, 1959, about 4 p.m., on Highway 128 between Yorkville and Boonville, in Mendocino County. The highway is divided by a white center line into a northbound lane and a southbound lane.

The Cadillac was going north and the truck was going south. The highway curves gradually to the right going north and to the left going south. It is slightly upgrade going south. There is a steep bank on the easterly side, cut from the hill on that side. Weather conditions and visibility were good.

Appellants pinpoint the issue in these words: "The sole issue then in this case is whether there is any direct evidence or inference from direct evidence which would support a finding of the truck having been driven so that it crossed the white line."

The appellants' equipment consisted of a "cab over" tractor and two trailer vans. The overall rig was 60 feet long. It was returning from Fort Bragg empty.

Respondent testified that when she saw the truck coming toward her it was about 60 feet away and had just come out of a turn into a straight stretch of highway. Respondent was quite familiar with this section of the highway, having driven it almost daily for 10 years.

Her version of what then happened is as follows: "Q. . . . Now, when you first saw the truck was any part of it over the white line into your lane? A. Yes, I believe. I am not sure about that, but it was over where it frightened me, and I got way over on my side. Q. To the best of your recollection was it over the white line or not? A. Yes. . . . Q. . . . Now, when

you first saw that truck what did you do? A. I pulled over as close as I could to the bank. . . . Well, I was over the bank as far as I could get, and right on the bank there is a rock. And I hit it, and my front wheels went up the bank, and I was stopped. And then he hit the rear end of my car. Q. I see. You were stopped at the time of the impact? A. Yes. Q. Now, were you able to observe the path of the truck from the time you first saw it until the impact? A. Yes. It seemed like he was just coming closer and closer to me, and I got real panicky. Q. Now, was he coming over into your lane or going back into his own lane or what? A. Well, after he hit me he was going back in his own lane. Q. I mean before the collision? Did you observe the path the truck took; that 60 feet before the collision is what I am getting at. A. Yes; seemed like he was going toward me all the time.''

All of the debris attributable to the collision, consisting of fender dirt, a broken tail light lens, and a piece of chrome, was lying on the pavement on respondent's side of the white line.

Respondent testified that the truck struck the left rear fender of the Cadillac. The exact point of impact on the Cadillac was fixed by the tire marks or scrapings left by the truck on the fender. These marks were located about one foot up on that portion of the fender which is directly above the center or axis of the left rear wheel.

The exact location on the pavement of the left rear tire at the actual moment of collision is of importance. If this tire was then on respondent's side of the white line, the truck had to cross over the center line in order to strike the left side of the Cadillac at the point indicated by the marks on the fender.

The location of the tire marks that were made on the pavement by the left rear tire of the Cadillac was testified to by witnesses who arrived after the accident. A photograph showing the location of these marks and their distance from the white line was admitted in evidence without objection. This testimony and photographic evidence established without question that these tire marks were on respondent's side and were at least 2 feet from the white line.

We repeat, it follows that the truck *had* to cross over the center line for a distance of at least 2 feet in order to make contact with that portion of the Cadillac indicated by the evidence.

Appellants' theory is based entirely upon the testimony of

their truck driver. It is that, when respondent's right front wheel struck the rock which was lying just off the pavement, it caused the rear end of the Cadillac to swing around sideways and over the center line.

Respondent admits that the striking of the rock caused the rear end to swing toward the center but not to the extent claimed by appellants, as we have already seen. This conflict was resolved by the trial court in favor of respondent.

Viewing the evidence in the light most favorable to respondents, as we must, and using appellants' own wording of the sole issue before us, we are of the opinion that the evidence is sufficient to uphold the trial court's implied finding that the truck was "driven so that it crossed the white line."

Judgment affirmed.

Shoemaker, P. J., concurred.